# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) **1:08-cv-1038 (PAC)** |
| | ) |
| **DANA CORPORATION,** *et al.*, | ) |
| | ) |
| Debtors, | ) |
| | ) |
| | ) |
| **JOSÉ ANGEL VALDEZ,** | ) |
| | ) |
| Appellant. | ) |

## BRIEF OF APPELLANT JOSÉ ANGEL VALDEZ

Alan Eric Gamza (AG 2014)
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York  10174-1299
Telephone:  (212)554-7400
Facsimile:    (212) 554-7700
agamza@mosessinger.com


Joseph D. Frank (JF 6085)[*]
FRANK/GECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois  60610
Telephone:  (312) 276-1400
Facsimile:    (312) 276-0035
Email:        jfrank@fgllp.com

---

[*] Application for admission *pro hac vice* filed February 13, 2008 (District Court Docket No. 10).

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

JURISDICTIONAL STATEMENT ..........................................................................................- 1 -

STATEMENT OF THE ISSUES PRESENTED........................................................................- 1 -

STATEMENT OF THE CASE...................................................................................................- 2 -

STATEMENT OF FACTS .........................................................................................................- 3 -

STANDARD OF REVIEW ........................................................................................................- 7 -

ARGUMENT ..............................................................................................................................- 7 -

I.      The Bankruptcy Court erred as a matter of law by confirming a Plan that incorrectly designates Asbestos Personal Injury Claims as unimpaired...................................................- 8 -

II.     The Bankruptcy Court erred as matter of law in confirming a plan that failed to satisfy the requirements of 11 U.S.C. § 1129................................................................................- 11 -

    A.   The Plan failed to satisfy the requirements of 11 U.S.C. 1129(a)(7)........................- 11 -

    C.   The Plan failed to satisfy the requirements of 11 U.S.C. § 1129(a)(11)...................- 13 -

        1.   The assets reserved to pay Asbestos Personal Injury Claims are subject to substantial risk. ................................................................................................................- 14 -

        2.   The Debtors have failed to account for the possibility that Asbestos Personal Injury Claim Liabilities will exceed their projections. ...........................................................- 15 -

III.    The Bankruptcy Court erred by confirming the Plan, which improperly classifies Asbestos Claims separately from other claims of similar character and equal priority. ......- 20 -

CONCLUSION.........................................................................................................................- 24 -

## TABLE OF AUTHORITIES

**CASES**

*Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprises, Ltd II (In re Briscoe Enterprises, Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993)..............................- 11 -

*Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 126 S. Ct. 2105, 2109 (2006).........................................................................................................- 22 -

*In re Adelphia Communications Corp.*, 368 B.R. 140, 252 (S.D.N.Y. 2002) ...........................- 12 -

*In re Atlantic Terrace Apartment Corp.*, 226 B.R. 535 (Bankr. E.D.N.Y. 1998).....................- 10 -

*In re Boston Post Road Limited Partnership*, 21 F.3d 477 (2nd Cir. 1994)............................- 20 -

*In re Boston Post Road Ltd. Partnership.* 21 F.3d 477, 483 (2nd Cir. 1994), *cert. denied*, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995)..............................................- 23 -

*In re Chateaugay Corp.,* 89 F.3d 942 (2nd Cir. 1996) ...........................................................- 20 -

*In re Colonial Realty Co.,* 980 F.2d 125, 130 (2d Cir.1992) ....................................................- 7 -

*In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 284 (Bankr. S.D.N.Y. 1990) ...............- 13 -

*In re Fur Creations by Varriale, Ltd.,* 188 B.R. 754, 760 (Bankr. S.D.N.Y. 1995).................- 11 -

*In re Gramercy Twins Assoc.,* 187 B.R. 112, 124-125 .........................................................- 11 -

*In re JLM, Inc.*, 210 B.R. 19, 23 (2nd Cir. BAP. 1997) .........................................................- 19 -

*In re L&J Anaheim Assoc.*, 995 F.3d 940, 943 (9th Cir. 1993) ...............................................- 8 -

*In re Peters,* 133 B.R.291, 294 (S.D.N.Y.1991)......................................................................- 7 -

*In re PPI Enterprises, Inc.*, 324 F.3d 197, 203 (3d Cir. 2003) ................................................- 8 -

*In re SM 104, Ltd.*, 160 B.R. 202 (Bankr. S.D. Fla. 1993) ...................................................- 20 -

*In re Smith,* 123 B.R. 863, 866-67 (Bankr. C.D. Cal. 1991) ...................................................- 9 -

*In re Spirited, Inc.*, 23 B.R. 1004, 1007 (Bankr. E.D. Pa. 1982)..............................................- 9 -

*In re Worldcom, Inc.*, 2003 WL 23861928, *43 (Bankr. S.D.N.Y. 2003)...............................- 11 -

*New York State Dep't of Taxation & Fin. V. Hackeling (In re Luis Elec. Contracting Corp.)*, 927 F2d 713, 717 (2nd Cir. 1990)..............................................................................- 19 -

*See In re Western Pacific Airlines, Inc.*, 263 B.R. 345, 347 (D. Colo. 2001) ........................- 19 -

**STATUTES**

11 U.S.C. § 101 .........................................................................................................................- 2 -

11 U.S.C. § 1122 ......................................................................................................................- 20 -

11 U.S.C. § 1124.......................................................................................... - 5 -, - 8 -, - 9 -

11 U.S.C. § 1124(a)(1).............................................................................................................- 1 -

11 U.S.C. § 1126................................................................................... - 8 -, - 9 -, - 10 -, - 20 -

11 U.S.C. § 1129 ............................................................................................................... passim

11 U.S.C. § 524(g) ........................................................................................... - 7 -, - 25 -

11 U.S.C. § 726(a) ...................................................................................................................- 12 -

11 U.S.C. § 726(a) ...................................................................................................................- 21 -

28 U.S.C. § 158(a) ...................................................................................................... - 1 -, - 3 -

28 U.S.C. § 158(a)(1)...............................................................................................................- 1 -

**RULES**

Fed. R. Bankr. P. 8013 ..............................................................................................................- 7 -

# JURISDICTIONAL STATEMENT

On January 4, 2008, Jose Angel Valdez (the "Appellant" or "Valdez") filed a Notice of Appeal in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). (Rec. 34).[2] On January 14, 2008, Appellant filed his Statement of Issues on Appeal and his Designation of Content of Record on Appeal Relating to Bankruptcy Court Case No 06-10354 (BRL). District Court Docket No. 2.

This Court has jurisdiction over appeals from all final decisions, judgments, orders and decrees entered by the Bankruptcy Court under 28 U.S.C. § 158(a)(1). The Written Opinion and Order Confirming Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, entered on December 26, 2007 (the "Confirmation Order"), is a final order subject to this Court's jurisdiction to hear appeals from final orders of the Bankruptcy Court under 28 U.S.C. § 158(a)(1).

# STATEMENT OF THE ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred when it confirmed the Plan and held that holders of Asbestos Personal Injury Claims are unimpaired pursuant to 11 U.S.C. § 1124(a)(1) will retain the same legal, equitable and contractual rights as they possessed prior to the Petition Date, and such rights are unaltered by the Plan.

2.      Whether the Bankruptcy Court erred when it confirmed the Plan and held that if holders of Class 3 Asbestos Personal Injury Claims were entitled to the protection of 11 U.S.C. § 1129(a)(7), then that section would be satisfied with respect to such holders.

3.      Whether the Bankruptcy Court erred when it confirmed the Plan and held that, with respect to each class of claims or interests, such class has accepted the Plan or such class is not impaired under the Plan pursuant to 11 U.S.C. § 1129(a)(8).

4.      Whether the Bankruptcy Court erred when it confirmed the Plan and held that the Plan is feasible, within the meaning of 11 U.S.C. § 1129(a)(11), and improperly excluded evidence on this issue.

5.      Whether the Bankruptcy Court erred when it confirmed the Plan and held that (a) the Plan properly classified all Claims and Interests in accordance with 11 U.S.C. § 1123(a)(1);

---

[2] References to Appellant's Designation of Content of Record on Appeal shall be designated as ("Rec. ___"), and, if applicable, paragraph (Rec. __, ¶ __), page (Rec.__, P.__), or exhibit (Rec.__, Ex. __).

(b) the Debtors have provided proof of a legitimate reason for the separate classification of such Claims; and (c) such classification is justified.

## STATEMENT OF THE CASE

On March 3, 2006 (the "Petition Date"), Dana Corporation ("Dana") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (Rec. 1, Art. V).  On October 23, 2007, the Debtors filed their Third Amended Joint Plan of Reorganization)[3] and Third Amended Disclosure Statement.  (Rec. 1, 2).

Under the Plan, the Debtors segregated the claims of asbestos personal injury claimants into a separate class and deemed those claims unimpaired because, post-confirmation, the asbestos claimants could assert their claims in the tort system.  (Rec. 1, p. 66); (Rec. 2, Art. II.B). A month later, on November 29, 2007, the Appellant, a victim dying from exposure to asbestos-laden automotive gaskets manufactured by the Debtors, filed his objection to the Plan.  (Rec. 6). Less than two weeks later, on December 10 and 11, 2007, the Bankruptcy Court held a hearing on confirmation of the Plan (the "Confirmation Hearing"), with closing arguments presented on December 12, 2007.

At the Confirmation Hearing, the Bankruptcy Court permitted the Debtors to present eight witnesses and to introduce substantial evidence in favor of confirmation over the course of nearly two full days of trial.  (Rec. 32, 33).  However, even though Appellant sought to present only two witnesses, the Bankruptcy Court refused Appellant's initial request for a third day of

---

[3] All capitalized terms used but not defined herein have the meaning given to them in the Plan.

trial and required that all witnesses be presented by the end of the day on December 11. 12/11/2007 Tr. at 218:23-219:1; 226:9-17.[4]

The end result of the Bankruptcy Court's disregard for due process of law was a scheduling scenario in which the Court limited testimony by one of Appellant's witnesses to 15 minutes. 12/11/2007 Tr. at 218:23-219:1. Even in that narrow time frame, the Bankruptcy Court raised and sustained its own objections, blocking the introduction of cogent evidence directly responsive to issues raised during the Debtors' case in chief. See, *e.g.*, 12/11/2007 Tr. at 224:19-225:4; 225:20-226:6; 226:19-227:17.[5]

At the conclusion of the Confirmation Hearing, after several hours of closing argument, the Bankruptcy Court immediately stated that it would confirm the Plan without making a single specific finding of fact. 12/12/2007 Tr. at 94:21-96:5. On December 26, 2007, the Bankruptcy Court entered an order drafted by the Debtors that confirmed the Plan and overruled the objections of the Appellant (the "Confirmation Order"). (Rec. 30). On January 4, 2008, the Appellant, Mr. Valdez, timely appealed. (Rec. 34).

## STATEMENT OF FACTS

Dana and its affiliates are leading suppliers of axle, driveshaft, structural, sealing, thermal management and related products for global vehicle manufacturers. As of June 30, 2007, Dana and its affiliates employed nearly 40,000 people and operated in 28 countries. (Rec. 1, p. 12). For decades, the Victor Products Division of Dana, currently known as the Sealing Products Division, manufactured asbestos-laden automotive gaskets. (Rec. 40, Ex. 34 at 7). Although many other companies stopped manufacturing and distributing products containing asbestos in

---

[4] Inexplicably, large portions of the colloquy between the Bankruptcy Court and Appellant's counsel, in which the Court refused to hear a third day of testimony and limited the time for presentation of Appellant's witness, is missing from the transcripts.

[5] References to the transcript from the Confirmation Hearing, designated as Record Nos. 29, 32 and 33, will be by date, "Tr." and the page and line number(s) cited.

the 1970s, such was not the case for Dana.  Dana continued to produce and sell asbestos-containing products until 2002.  (Rec. 37, p. 23).  Furthermore, over 1,000 current asbestos claimants allege they were first exposed to Dana's asbestos-containing products after 1980. (Rec. 37, p. 23).

The Appellant, Mr. Valdez, is a retired auto mechanic who regularly worked with the gaskets that Dana manufactured using asbestos.  (Rec. 6, p. 1).  After years of exposure, Mr. Valdez has been diagnosed with malignant mesothelioma, a fatal illness.  (Rec. 6, p. 1).  Mr. Valdez is not alone.  The Debtors estimated that there were at least 35,000 active asbestos personal injury claims ("Asbestos Claims") pending against one or more of the Debtors as of the Petition Date and an additional 96,813 pending, but inactive, claims that may become active in the future.  (Rec. 18, Attachment, p. 2).  In addition, because the automatic stay imposed a moratorium on the filing of new claims, additional asbestos-related claims likely will be asserted against the Debtors following the Effective Date of the Plan.  12/10/2007 Tr. at 263:24-264:3.

Although the Debtors negotiated with all of their other creditor constituencies during the plan process, the Debtors chose to ignore their more than 100,000 asbestos claimants.  At the outset, the Debtors opposed the request of the asbestos claimants for appointment of an official asbestos claimants' committee to represent their interests, and the Bankruptcy Court denied that request even while three separate committees of general unsecured creditors, retirees and equity holders were appointed.[6]  (Rec. 1, at 20-22).  The asbestos claimants would fare no better under the Debtors' Plan.  In the Plan, the Debtors gerrymandered the asbestos victims into a separate class, Class 3, apart from all other unsecured creditors and all other tort claimants.  Not

---

[6] One asbestos claimant, Julio Gonzalez, Jr., as Special Administrator of the Estate of Julio Gonzalez, deceased, was appointed to the eight-member Official Committee of Unsecured Creditors.  Mr. Gonzalez is represented in his asbestos personal injury litigation by the Chicago law firm of Cooney & Conway, which is the same firm that represents Mr. Valdez.  Cooney & Conway, on behalf of its clients with asbestos claims against Dana, joined in Mr. Valdez' objection to confirmation of the Plan (Rec. 7).

surprisingly, Class 3 is the only class of unsecured creditors who do not receive a distribution of property of the Debtors' estates when the Plan becomes effective. (Rec. 2, Art. II.B). Moreover, Class 3 is the only class of unsecured creditors who were denied the right to vote on the Plan. (Rec. 2, Art. II.B). The Debtors maintained that Class 3 was unimpaired because asbestos claims would be "Reinstated" on the Effective Date of the Plan (Rec. 2, Art. II.B.6). In true circular fashion, the Plan defined "Reinstated" or "Reinstatement" to mean "rendering a Claim or Interest unimpaired with the meaning of section 1124 of the Bankruptcy Code." (Rec. 2, Art. I.A.164).

Throughout the Confirmation Hearing, the Debtors attempted to justify the separate classification and nonimpairment of the asbestos victims by asserting that the assets and insurance available to pay their claims would be more than sufficient. 12/11/2007 Tr. at 148:10-154:6; 12/12/2007 Tr. at 54:14-18. However, the Debtors' Chief Restructuring Officer, Ted Stenger, testified that "in the analyses that are done by the companies' experts, approximately 50 percent of the projected costs of the asbestos settlements, including legal fees are recovered from insurance." 12/10/2007 Tr. at 184:13-16.

Despite acknowledging that insurance alone would be insufficient to pay their asbestos liabilities, the Debtors proposed, and the Bankruptcy Court confirmed, a plan that purposefully places the Debtors' valuable operating assets beyond the reach of the Debtors' asbestos victims. Under the Plan, the Debtors were to engage in a series of post-confirmation restructuring transactions (the "Restructuring Transactions") that would move all of the Debtors' operating assets into a family of new corporations. (Rec. 2, Art. V.B.1). Meanwhile, the old parent company, with tens of thousands of active Asbestos Claims pending against it, was stripped of all going concern value and propped up with a relatively small amount of cash and a handful of speculative and tarnished assets before being merged into a new corporation, Dana Companies LLC. (Rec. 38, p.1). The end result of the Restructuring Transactions is that Dana Companies

LLC will defend, resolve and pay approximately 130,000 pending claims and all future claims, as well as all administrative costs, environmental remediation costs and legal defense costs it incurs, from the following assets: (i) the proceeds of the Debtors' insurance policies (Rec. 38, pp.6-9); (ii) certain parcels of environmentally-impacted real property (the "Properties") that the Debtors hope to sell for the appraised amount of $4.75 million (Rec. 38, pp.1-5), substantially less than the liabilities associated with these Properties (12/10/2007 Tr. at 179:12-13); (iii) a non-publicly tradable promissory note from Affinia Corp. with an alleged book value of $71 million (12/10/2007 Tr. at 148:14-149:11); (iv) reimbursements due from members of the Center for Claims Resolution and the Debtors' insurance carriers totaling approximately $30 million that remain unpaid, subject to certain litigation, and uncertain timing (12/10/2007 Tr. at 220:15-18; 12/11/2007 Tr. at 30:24-31:16; 33:5-40-5); (v) cash on hand totaling approximately $17.35 million (Rec. 38, p. 9); and (vi) expected interest income of $10,754,000 based on the various funds expected over time (12/10/2007 Tr. at 221:25-223:2) (collectively, the "Asbestos Assets").

Although Dana Companies LLC will be able to seek indemnity and reimbursement from the Debtors' insurers, as stated at the Confirmation Hearing, the Debtors project that only 50% of the costs of their asbestos liability will be covered by insurance. 12/10/2007 Tr. at 184:13-16. This asset pool must be viewed in light of the $65 million in expenses that the Debtors incurred for defense and resolution of asbestos claims in just the 39-month period before the bankruptcy. (Rec. 40, Ex. 34); 12/10/2007 Tr. at 262:4-24.

In sum, when the Debtors filed for bankruptcy, Asbestos Claimants could look to all of the Debtors' assets to satisfy any judgment or settlement they obtained, along with the meager assets being left behind in the Reorganized Debtors. After the Restructuring Transactions, these operating assets, with an enterprise value of roughly $4 billion (12/10/2007 Tr. at 118:24-119:5),

were placed beyond the reach of Asbestos Claimants, even though they never had a chance to vote on the Plan, or even fully present their evidence in opposition to confirmation.

## STANDARD OF REVIEW

This Court reviews the factual findings of the Bankruptcy Court under a "clearly erroneous" standard, but reviews conclusions of law *de novo. See In re Colonial Realty Co.,* 980 F.2d 125, 130 (2d Cir.1992) (*de novo* review was appropriate when questions involved are matters of statutory interpretation); *In re Peters,* 133 B.R.291, 294 (S.D.N.Y.1991) ("on appeal, conclusions of law are reviewed *de novo*"); Fed. R. Bankr. P. 8013.

## ARGUMENT[7]

Dana, as a supplier to the automotive industry, came to the Bankruptcy Court facing numerous financial challenges other than its asbestos liabilities: bond debt, troublesome union contracts, environmental liabilities, rising commodity prices and a diminishing customer base. (Rec. 1, 13-19). Yet the necessity of resolving present financial crises is not a license to ignore past and future liabilities from the manufacture of deadly asbestos products. Congress recognized the obstacles faced by companies like Dana in trying to resolve their asbestos liabilities and, in response, enacted section 524(g) of the Bankruptcy Code. 11 U.S.C. § 524(g). Under section 524(g), a company may channel all present and future asbestos personal injury claims to a trust, funded by a stream of future income, if, among other requisites, a supermajority of the asbestos creditors consent and the company demonstrates that future claimants will receive substantially the same treatment as present claimants. Dana cavalierly chose to ignore section 524(g) and instead separately classified asbestos creditors, deemed their claims "unimpaired" because the claims will be "reinstated," and deprived the asbestos creditors of the opportunity to vote on the Plan. (Rec. 2, Art. II.B.6).

---

[7] In order to conserve space and avoid repetition, Appellant, in addition to his argument, adopts the brief filed by the Ad Hoc Committee of Asbestos Personal Injury Claimants filed in Case No. 1:08-cv-01037. The Debtors are seeking to consolidate this appeal with that case.

Congress intended a Chapter 11 reorganization to be a process of negotiation among the debtor and its various creditor constituencies to achieve a consensual plan of reorganization. Where a creditor constituency does not consent by voting in favor of the plan, Congress requires the bankruptcy court to find that the plan treats the non-consenting creditor constituency fairly and equitably, and that the plan's treatment of the non-consenting creditor constituency is feasible. 11 U.S.C. §§ 1129(a)(8), (11), 1129(b). Reorganizations succeed when creditors have a meaningful voice and the bankruptcy court enforces the requirements of the Bankruptcy Code. Here, asbestos claimants were silenced from the start and the bankruptcy court wholly failed to protect their interests.

**I.     The Bankruptcy Court erred as a matter of law by confirming a Plan that incorrectly designates Asbestos Personal Injury Claims as unimpaired.**

The concept of impairment is the key to creditor participation in the reorganization process. Impaired creditors vote; unimpaired creditors have no vote. 11 U.S.C. §§ 1126 (a), (f). For this very reason, creditors are presumed to be impaired. *See In re PPI Enterprises, Inc.*, 324 F.3d 197, 203 (3d Cir. 2003)(citations omitted) ("[t]he Bankruptcy Code creates a presumption of impairment 'so as to enable a creditor to vote on acceptance of the plan.'"); *see also, In re Seasons Apartments, Ltd. Partnership,* 215 B.R. 953, 958 (Bankr. W.D. La. 1997). Whether a claim is impaired under section 1124 is a question of law, subject to *de novo* review. *See In re L&J Anaheim Assoc.*, 995 F.3d 940, 943 (9th Cir. 1993). In *PPI Enterprises*, the Third Circuit laid the burden of establishing non-impairment on the debtor who must "demonstrate the plan leaves the creditor's rights unaltered." *Id.* at 203. Under section 1124 of the Bankruptcy Code, a debtor can only rebut the presumption of impairment by unequivocally establishing that the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(a)(1).

Here, the Bankruptcy Court, without explanation or analysis, entered the conclusory Confirmation Order propounded by the Debtors. Parroting the language of section 1124, the Bankruptcy Court held:

> With respect to Asbestos Personal Injury Claims classified in Class 3, even after giving effect to the Restructuring Transactions, holders of Asbestos Personal Injury Claims will retain the same legal, equitable and contractual rights as they possessed prior to the Petition Date, and such rights are unaltered by the Plan and the Restructuring Transactions.

(Rec. 30, ¶ H.12). In holding that the claims of asbestos victims were unimpaired, the Bankruptcy Court made a clear, legal error.

Asbestos Creditors are impaired under the Plan as a matter of law for two primary reasons. First, asbestos victims receive no distribution from the Debtors when the Plan becomes effective. The Debtors skirt the issue of no distribution to asbestos claimants by asserting that holders of these claims will eventually receive payment in full once their claims are liquidated against the Reorganized Debtors. However, claims that pass through a debtor's bankruptcy estate without receiving payment are <u>impaired by definition</u> because the plan does not provide for payment to the extent the claims are ultimately allowed. *See, e.g., In re Smith,* 123 B.R. 863, 866-67 (Bankr. C.D. Cal. 1991); *In re Spirited, Inc.*, 23 B.R. 1004, 1007 (Bankr. E.D. Pa. 1982) ("The entire thrust of § 1124 deals with the payment of claims . . . Thus the mere recognition or non-cancellation of a class of claims or interests is not sufficient to render a class unimpaired under § 1124(1)"). Furthermore, because the Asbestos Creditors receive or retain no property of the Debtors' estates on account of their Asbestos Claims, they should be presumed to <u>reject</u> the Plan as impaired creditors. Section 1126(g) of the Bankruptcy Code provides:

> Notwithstanding any other provisions of this Section, a Class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interest to receive or retain any property under the Plan on account of such Claims or interest.

11 U.S.C. § 1126(g). Simply put, where a class such as the Debtors' asbestos victims does not receive or retain any property under the Plan, that class is deemed to have rejected the plan. The Bankruptcy Court's determination that holders of Asbestos Claims are unimpaired and therefore are presumed to have accepted the Plan pursuant to section 1126(f) is contrary to section 1126(g) and clearly erroneous as a matter of law.

Second, the claims of the asbestos victims are impaired because their allegedly "reinstated" claims vest against a post-confirmation debtor stripped of its assets. Prior to the Petition Date, a holder of an Asbestos Claim against Dana could seek satisfaction of the claim from any or all of the Debtors' operating assets. Here, the Plan provides for a series of Restructuring Transactions that greatly reduce the assets available to satisfy Asbestos Creditors. The Plan's Restructuring Transactions involve the formation and capitalization of Dana Holdings Incorporated, Dana Limited and a variety of business unit and/or product group-specific limited liability companies into which the Debtors will transfer their operating and administrative assets. (Rec. 2, Art. V.C.1a; Ex. V.C.1.a.). Thereafter, Dana Corporation will merge into Dana Companies, LLC and Dana Holdings Incorporated will distribute its stock and cash to creditors of the Debtors (other than holders of Asbestos Claims). After these Restructuring Transactions, a shell corporation is left to bear the full burden of the asbestos liabilities, funded only by the Debtors' insurance policies, a relatively small amount of cash, certain environmentally impacted property, a promissory note and reimbursement obligations from the Center for Claims Resolution and the Debtors' insurance carriers. In *In re Atlantic Terrace Apartment Corp.,* 226 B.R. 535 (Bankr. E.D.N.Y. 1998), the court recognized that any change in the rights of a creditor could render that creditor impaired, finding that the substitution of assets from which a creditor

was entitled to recover constituted impairment.  Here, the impairment of the asbestos victims could not be clearer.  Before the bankruptcy, an asbestos creditor could collect a judgment against a thriving corporate giant; after the bankruptcy, that same creditor can only hope to collect a judgment from a corporate shell.

## II.    The Bankruptcy Court erred as matter of law in confirming a plan that failed to satisfy the requirements of 11 U.S.C. § 1129.

In order to confirm this Plan, the Bankruptcy Court was required to find that the Plan complied with all of the requirements of section 1129(a) of the Bankruptcy Code.  Section 1129 contains the legal tests a court must use to ensure that the rights of creditors are protected.  As the proponents of the Plan, the Debtors bear the burden of proving compliance with each of the requirements of 11 U.S.C. § 1129.  *In re Fur Creations by Varriale, Ltd.*, 188 B.R. 754, 760 (Bankr. S.D.N.Y. 1995).  A debtor must meet this burden by a preponderance of the evidence.  *See, e.g. In re Worldcom, Inc.*, 2003 WL 23861928, *43 (Bankr. S.D.N.Y. 2003), *citing Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprises, Ltd II (In re Briscoe Enterprises, Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993).  Again, summarily adopting the Debtors' position without any independent analysis or scrutiny, the Bankruptcy Court held that the Plan met the "best interest of creditors test," the "fair and equitable test" and the "feasibility test."  As a matter of law, the Plan failed each of these tests and the Bankruptcy Court failed to protect the interests of creditors.

### A.    The Plan failed to satisfy the requirements of 11 U.S.C. 1129(a)(7).

Section 1129(a)(7) of the Bankruptcy Code imposes a legal standard known as the "best interest of creditors" test.  As the name suggests, the test is intended to determine whether creditors in each class are, in fact, better off or worse off than they would be if the Debtors' assets were simply liquidated under chapter 7 of the Bankruptcy Code.  *See In re Gramercy Twins Assoc.*, 187 B.R. 112, 124-125 (Bankr. S.D.N.Y. 1995) (citing cases).    Under

section 1129(a)(7), the bankruptcy court cannot confirm a plan unless each holder of a claim in

an impaired class:

> (i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim . . . property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7).  In the Confirmation Order, the Bankruptcy Court found:

> Section 1129(a)(7) of the Bankruptcy Code is inapplicable to Asbestos Personal Injury Claims classified in Class 3 because such Claims are not impaired by the Plan.  Even were the holders of Class 3 Asbestos Personal Injury Claims entitled to the protections of section 1129(a)(7) of the Bankruptcy Code, that section would be satisfied with respect to such holders.

(Rec. 30, ¶ G).  Inherently recognizing that the "best interests test" applied to the asbestos

victims, the Bankruptcy Court nonetheless failed to apply the test as Congress required.

As proponents of the Plan, the Debtors bear the burden of showing that the Plan complies

with section 1129(a)(7). "That burden is met by showing that creditors will receive at least as

much under the [p]lan as they would receive in a liquidation of the [d]ebtor's assets under

chapter 7."  *In re Adelphia Communications Corp.*, 361 B.R. 337, 364. (S.D.N.Y. 2002).  That

determination "is a finding of fact, and it is reviewed under the clearly erroneous standard." *Id*. at

364-65.  Here, holders of Asbestos Claims receive <u>no</u> <u>property</u> on account of their claims.

Although the Debtors anticipate that these creditors will eventually obtain a recovery from the

Debtors' insurance carriers, as recognized by the Debtors' Chief Restructuring Officer, Ted

Stenger, insurance proceeds alone are insufficient to pay the projected asbestos liabilities in full,

and insurance proceeds would be equally available in a chapter 7 liquidation.  12/10/2007 Tr. at

184:13-185:22.  With respect to claims and amounts not covered by insurance, a chapter 7

liquidation would provide a fixed, *pro rata* share of the Debtors' assets in addition to insurance

recoveries.  *Id.* at 185:13-17.  11 U.S.C. § 726(a).  The Debtors' Plan, however, provides only an

invitation to litigate with the Reorganized Debtors.  Because the Plan fails to offer these creditors

at least what they would obtain in a chapter 7 liquidation, the Plan fails the best interest of creditors test under 11 U.S.C. § 1129(a)(7).  There is no reasonable basis on which to find that the requirements of section 1129(a)(7) have been satisfied, and the Bankruptcy Court's finding that the Plan meets that standard constitutes clear error.

### C.    The Plan failed to satisfy the requirements of 11 U.S.C. § 1129(a)(11).

Congress also mandated that the Bankruptcy Court independently determine whether the Plan is feasible.  Section 1129(a)(11) of the Bankruptcy Code requires that a plan may not be confirmed if confirmation is likely to be followed by the liquidation, or the need for further financial reorganization of the debtor.  11 U.S.C. § 1129(a)(11).  As with the other requirements of section 1129(a), the plan proponent has the burden of showing that the plan is feasible.  *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 284 (Bankr. S.D.N.Y. 1990).  At the Confirmation Hearing, the Debtors sought to establish that the Restructuring Transactions will result in new operating entities that will have substantial enterprise value, significant funding and include several business entities that are expected to be profitable.  12/10/2007 Tr. 102:23-103:20.  However, the feasibility of the corporate shell responsible for paying the asbestos victims remains in doubt.

The Debtors' Plan contemplates that Asbestos Creditors will obtain full payment of their claims from the non-operating assets of the corporate shell.  In creating this non-operating corporate shell, the Debtors have left themselves no margin for error, dedicating only those speculatively-valued assets to Dana Companies LLC that are necessary to meet the Debtors' artificially low estimations of potential asbestos liabilities.  Accordingly, the Debtors have not recognized significant risks that are likely to leave the Reorganized Debtors without sufficient assets to meet their Asbestos Claim liabilities.  If the Debtors are even slightly wrong in their estimations of liability and asset value, holders of Asbestos Claims will suffer the consequences.

      **1.**      **The assets reserved to pay Asbestos Personal Injury Claims are subject to substantial risk.**

Although the Debtors estimate that 100% of the asserted value of the Asbestos Assets will be obtained, they fail to account for or provide a cushion for certain risks that could impact the value of these assets.  First, the Debtors will likely face exhaustion/ excess level issues, self-insured retention issues, and other insurance defenses that would cause certain Debtors' insurance carriers to deny coverage with respect to particular claims.  *See* Declaration of John E. Heintz in Support of Confirmation of Plan.  (Rec. 20, ¶ 5).  In addition, all of the Debtors' post-May 1986 insurance policies contain absolute asbestos exclusions, which will bar coverage for any Asbestos Claims.  (Rec. 20, ¶ 7).  Because the Debtors continued to distribute products containing asbestos until 2002, insurance coverage will not be available to pay innumerable claims.  (Rec. 37, p. 23).

The Reorganized Debtors are not likely to obtain the projected values for the other assets held by the corporate shell.  Although the Debtors purport to be close to selling several parcels of environmentally-impacted real estate at or near appraised values, the environmental liabilities for the properties are projected to aggregate over $12 million dollars.  (Rec. 38, p. 1).  The properties also will continue to incur carrying costs until sold.  In addition, the Debtors may experience difficulty collecting on the reimbursement obligations of former CCR members.  Many of these entities have themselves sought bankruptcy protection, and at least one of these reimbursement claims is the subject of active litigation and another is the subject of negotiations that may lead to future litigation.  12/10/2007 Tr. at 256:4-18; 12/11/2007 Tr. at 30:24-31:16; 33:5-40:5.  Asked when the Debtors could expect to recover these monies, William Hanlon, one of the Debtors' professionals, testified that "Your guess is as good as mine."  12/11/2007 Tr. at 38:5-8.

In addition, the Reorganized Debtors' expected interest income is based on these same speculative asset values and the Debtors' projections of the amounts and timing of the accrual of

the Debtors' asbestos liabilities and other expenses.  12/10/2007 Tr. at 221:25-223:2.  To the extent that these assets are used more quickly or realize less than projected, the Reorganized Debtors' interest income will be reduced accordingly.

>    **2.     The Debtors have failed to account for the possibility that Asbestos Personal Injury Claim Liabilities will exceed their projections.**

The greatest risk to the feasibility of the Debtors' Plan is the potential for asbestos claim liabilities to exceed the Debtors' projections.  The Debtors maintain that they will be able to pay Asbestos Claim liabilities in full over the next 15 years from the Asbestos Assets based on the Debtors' estimates of the value of their insurance holdings and their assumption that expected future asbestos liabilities and related defense costs will decrease substantially.  This position is flawed in three ways because it depends on an implausible assumption of decreasing defense costs, disregards the nature of the Debtors' asbestos liability and relies entirely on the position of the Debtors' biased expert, who incorporates the other flaws in her liability forecast.  Moreover, the Bankruptcy Court's refusal to hear appellant's evidence on these issues constitutes reversible error in its own right.

First, the Debtors' forecasts rely on the estimate of R. Thomas Radcliffe, the Debtors' national asbestos defense counsel, that the Reorganized Debtors would incur a total of $20 million in expenses for asbestos defense and indemnity for the two years of 2008 and 2009 (12/10/2007 Tr. at 253:2-13).  This contention is somewhat remarkable in light of the fact that for two of the three years prior to the Debtors' bankruptcy filing, the Debtors incurred $25 million per year in expenses for asbestos defense and indemnity.  12/10/2007 Tr. at 262:16-21.  In addition, at the time of the Debtors' bankruptcy filing, there were over 2,000 claims against the Debtors that the Debtors expected would be "trial ready" in 2006.  12/11/2007 Tr. at 53:4-13.  Summarizing the premise for this low liability estimate, Mr. Radcliffe testified that the Debtors' future asbestos liabilities would be limited because their products contained the purportedly less

toxic chrysotile asbestos, used in the more limited automotive, as opposed to industrial, setting. 12/112/10/2007 Tr. at 233:20-235:11.

Contrary to the Debtors' assertions, the Appellant currently suffers from mesothelioma caused by the Debtors' gaskets and, at the Confirmation Hearing, Mr. Edward M. Nass, counsel to the estate of Louis Hicks, a claimant that obtained a substantial judgment against the Debtors on account of Mr. Hicks' malignant mesothelioma, testified that the jury in the *Hicks* case determined that Mr. Hicks had inhaled chrysotile asbestos fibers from the Debtors' products and that Dana was responsible for the development of Mr. Hicks's malignant mesothelioma. 12/11/2007 Tr. at 223:9-19. However, the Bankruptcy Court refused to hear further evidence on the issue, instead making and sustaining its own objection to the evidence. 12/11/2007 Tr. at 225:9-226:6.

In forecasting their asbestos liabilities, the Debtors only compounded this error. At the Confirmation Hearing, Dr. Robin Cantor, the Debtor's retained expert for forecasting asbestos liabilities, testified that her forecast did not incorporate the $5 million Hicks judgment or Dana's share of that liability, but did rely on Mr. Radcliffe's input with respect to factors that would purportedly reduce the Debtors' liability. 12/11/2007 Tr. at 139:12-23.

The issues of: (i) whether the Debtors' use of chrysotile asbestos fibers in its products until 1988 could cause any of the more serious asbestos-related diseases such as malignant mesothelioma; (ii) whether the Debtors may face industrial asbestos exposure liabilities; and (iii) whether the judgment obtained in the *Hicks* case is indicative of the Debtors' potential liabilities and the ineffectiveness of their new defense strategy are each relevant to the issue of whether the Reorganized Debtors will retain sufficient assets to pay all asbestos claims in full. The Bankruptcy Court's arbitrary refusal to permit the Appellant to introduce evidence on these issues, after accepting testimony from the Debtors' witnesses on each issue constitutes a clear

abuse of discretion. *See* 12/10/2007 Tr. at 235:3-11, 242:22- 243:1 and 244:15-17; 12/11/2007 Tr. at 224:19-225:4, 225:9 - 226:6 and 226:19-227:17. Although courts enjoy broad discretion over the admission of evidence, these arbitrary evidentiary rulings have caused harm to the Appellant by subjecting him to a Plan that, as the excluded evidence would demonstrate, is not feasible for purposes of section 1129(a)(11). Accordingly, these rulings should be reversed and the Confirmation Order vacated.

In support of confirmation of the Plan, Dr. Robin Cantor, the Debtors' expert witness, forecasted the Debtors' future defense and indemnity costs relating to Asbestos Claims and estimated that the total cost of indemnity and defense would range from $182 million to $292 million for "base case estimates." 12/11/2007 Tr. at 96. Dr. Cantor determined this amount, in part, based upon her assumption that despite substantial prepetition defense costs in relation to the indemnity paid, the Debtors would enjoy a precipitous drop in the defense to indemnity ratio over time.

Dr. Thomas Vasquez, the expert retained by the Official Committee of Unsecured Creditors, also conducted an analysis and forecast of the Debtors' potential Asbestos Claim liabilities. At the Confirmation Hearing, Dr Vasquez testified at length regarding the methodology he employed to forecast the potential present and future liabilities and stated that based on those methodologies, he forecast that the total cost of both indemnity and defense for pending and future claims would be between $700 million and $1.1 billion and that the total cost to the Debtors, after insurance coverage would be between $200 million and $500 million. 12/11/2007 Tr. at 174:4–175:18. Dr. Vasquez further testified that he saw no compelling reason to lower the defense-to-indemnity ratio as dramatically as proposed by Dr. Cantor. 12/11/2007 Tr. at 192:4-7. As Dr. Vasquez explained, "the issue I have with that is that it's simply pure

speculation. There's nothing that I can look at historically that would suggest that I'm going to drop from 12 to six to three." *Id.* at 194:10-14.

Finally, as Dr. Vasquez explained at the Confirmation Hearing, the Debtors' financial forecasts for the Reorganized Debtors' "sources and uses" ignore the fact the Reorganized Debtors could face retroactive insurance premiums of up to $36.5 million that may come due as the Reorganized Debtors obtain payments on their insurance policies. 12/11/2007 Tr. at 188:4-189:14. The non-operating assets allocated to the Reorganized Debtors to satisfy Asbestos Claims will be insufficient to pay those claims in full in the event such retroactive premiums are assessed.

Based on the testimony at the Confirmation Hearing, there is insufficient evidence from which the Bankruptcy Court could reasonably determine that the Debtors will be able to accomplish what they propose – payment of the full amount of Asbestos Claims from the assets segregated in the non-operating entities. Furthermore, that evidence, to the extent it supports confirmation, was incomplete because of the Bankruptcy Court's repeated wrongful decisions to limit evidence presented by Mr. Valdez's counsel. *See* 12/10/2007 Tr. at 235:3-11, 242:22-243:1, and 244:15-17; 12/11/2007 Tr. at 224:19-225:4 and 225:9-226:6.

Also, the Bankruptcy Court provided absolutely no explanation for its decision to adopt the projection by the Debtors' expert over the projection of Dr. Vasquez, who was not retained by Appellant, but rather the Unsecured Creditors' Committee, which also <u>supported</u> Plan confirmation. In itself, this failure to make specific factual findings that justify its conclusions and provide a basis for overruling Appellant's objections constitutes abuse of discretion and reversible error. Although the Bankruptcy Court adopts findings that the requirements of section 1129(a) have been met, the Court failed to articulate specific factual findings that justified its conclusions or provided a basis to overrule the objections raised by the Appellant. The

Bankruptcy Court's failure to provide this explanation constitutes an abuse of discretion warranting reversal of the Confirmation Order. *See In re Western Pacific Airlines, Inc.*, 263 B.R. 345, 347 (D. Colo. 2001) ("abuse of discretion can also occur when the trial judge fails to articulate a reason for his decision and one is left to guess because it is not apparent from the record."). Dr. Cantor and Dr. Vasquez gave conflicting views regarding the Debtors' actual and potential asbestos liabilities, with Dr. Vasquez predicting liabilities well in excess of the assets reserved to pay Asbestos Claims. (Rec. 37). The Bankruptcy Court found that "both Dr. Cantor and Dr. Vasquez were very knowledgeable about the estimation of future asbestos-related liabilities and were reliable in terms of making calculations based on the assumptions that they made and the methodologies they employed." (Rec. 30, ¶ Q.xviii). The Bankruptcy Court made no further finding to justify its decision in favor of Dr. Cantor's forecast. Because, if Dr. Vasquez is correct, the assets preserved to pay Asbestos Claims will be insufficient to pay these claims in full, the Bankruptcy Court's unsupported findings on feasibility constitute an abuse of discretion mandating reversal and remand of the Confirmation Order. *See In re JLM, Inc.*, 210 B.R. 19, 23 (2nd Cir. BAP. 1997) *citing New York State Dep't of Taxation & Fin. V. Hackeling (In re Luis Elec. Contracting Corp.)*, 927 F2d 713, 717 (2nd Cir. 1990) ("where the bankruptcy court's reasons for its conclusion are not evident and the reviewing court must resort to speculation as to the basis for the bankruptcy court's ruling, the Second Circuit has observed that 'the only appropriate procedure is to remand the case.'").

Moreover, regardless of the Bankruptcy Court's failure to explain its ruling, the evidence itself also mandates reversal. The Debtors left no margin for error in their projections and are unwilling to allay fears of insufficient assets by placing any of their operating assets at risk in the event that their estimates are wrong. (Rec. 38, p. 1). The Plan inappropriately imposes an unreasonable risk upon the holders of Asbestos Claims that the assets will be insufficient to pay

their claims, without any protections assuring a ratable distribution in the event of a shortfall.  As

a result, the Confirmation Order must be reversed.

## III.   The Bankruptcy Court erred by confirming the Plan, which improperly classifies Asbestos Claims separately from other claims of similar character and equal priority.

Debtors are not free to unilaterally classify claims at will.  The classification of creditors'

claims in a chapter 11 plan of reorganization is governed by 11 U.S.C. § 1122(a).  Section 1122

states that "a plan may place a claim or interest in a particular class only if such claim or interest

is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122.  Section

1122 clearly addresses the placement of dissimilar claims in the same class for treatment under a

plan, but is silent as to whether similar claims may be placed in *different* classes.  Seizing on this

silence, some plan proponents have attempted to separately classify dissenting creditors in order

to "gerrymander" sufficient acceptances to obtain plan confirmation under 11 U.S.C. § 1126,

which governs voting by creditors on chapter 11 plans.  *See, e.g.*, *In re SM 104, Ltd.*, 160 B.R.

202 (Bankr. S.D. Fla. 1993).   To address this issue, the Second Circuit Court of Appeals

provided instruction regarding the propriety of separate classification of similar claims in *In re*

*Boston Post Road Limited Partnership*, 21 F.3d 477 (2nd Cir. 1994) and in *In re Chateaugay*

*Corp.,* 89 F.3d 942 (2nd Cir. 1996), holding:

> [T]o warrant having separate classification of similar claims, the debtor must
> advance a legitimate reason supported by credible proof (citation omitted).  Thus,
> classification is constrained by two straightforward rules:  Dissimilar claims may
> not be classified together; <u>similar claims may be classified separately only for a
> legitimate reason</u>.

*Chateaugay*, 89 F. 3d at 949 (emphasis supplied).

Asbestos Claims against the Debtors are general unsecured claims under the Bankruptcy

Code, equal in priority to all other timely-asserted and unsubordinated general unsecured claims.

Indeed, in a chapter 7 liquidation, each general unsecured claim would receive identical

treatment.  11 U.S.C. § 726(a).  Under the Plan, however, general unsecured claims were divided

into five separate classes and treated as follows:

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 3 | Asbestos Personal Injury Claims | Reinstated on the Effective Date. |
| Class 4 | Convenience Claims against the Consolidated Debtors | On the Effective Date, each holder will receive Cash equal to the amount of such Allowed Claim. |
| Class 5A | General Unsecured Claims Against EFMG LLC | On the Effective Date, each holder will receive Cash equal to the amount of such Allowed Claim. |
| Class 5B | General Unsecured Claims Against the Consolidated Debtors | Each holder of an Allowed Claim will receive (a) on the Effective Date, its Pro Rata share, based upon the principal amount of each holder's Allowed Claim of the Distributable Shares of New Dana Holdco Common Stock and the Distributable Excess Minimum Cash; and (b) after the Effective Date, such periodic distributions of Reserved Shares and Reserved Excess Minimum Cash as are set forth in Section VI.G.5.b. |
| Class 5C | Union Claim | On the Effective Date, in full satisfaction of the Union Claim, the Debtors will make the UAW Retiree VEBA Contribution and the USW Retiree VEBA Contribution. |

(Rec. 2, Art. II.B).

The impact of the separate classification of Asbestos Claims is clear:  every class of

general unsecured claims other than Class 3 will receive a distribution of assets from the

Debtors' estates on the Effective Date.  (Rec. 2, Art. II.B).  Ironically, under the classification

scheme in the Plan, an individual who suffered a non-asbestos injury while working with a

defective product manufactured by the Debtors held a Class 5B Claim, payable on the Effective

Date, while an individual who developed asbestos-related illness from working with the Debtors'

products will obtain no distribution from the Debtors' assets on the Effective Date.  (Rec. 2, Art.

II.B.6, 9).  Instead, after being forced to wait almost two years by the automatic stay imposed in

the Debtors' bankruptcy cases, the Asbestos Claimant will have to initiate or resume lengthy and

costly litigation in state court.  Even if these two claimants are entitled to identical claim

amounts, their claims will be satisfied from separate groups of assets and only one claimant, the

Asbestos Claimant, will be subject to extensive delays and a risk that the assets will not be

available to pay his or her claim.  As a result, the Debtors' plan fails to provide equality of

distribution among similarly-situated creditors, which is mandated under the Bankruptcy Code and the hallmark of bankruptcy administration.  See *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 126 S. Ct. 2105, 2109 (2006) ("We are mindful that the Bankruptcy Code aims, in the main, to secure equal distribution among creditors.").

Furthermore all of the Debtors' other unsecured creditors with disputed claims are entitled under the Plan to the protections of the Disputed Unsecured Claims Reserve, but Asbestos Creditors receive no such protection.  (Rec. 2, Art. VI.E.1).  Pursuant to the Plan, each Class 5B creditor with a disputed claim is entitled to the reservation of sufficient cash and stock, for the claimant's sole benefit, to cover all Plan distributions due on the claim upon its resolution.  Individual holders of Asbestos Claims are entitled to no such protection.

Nevertheless, in the Confirmation Order, the Bankruptcy Court found:

> In accordance with section 1123(a)(1) of the Bankruptcy Code, Section II.B of the Plan properly classifies all Claims and Interests that require classification.  With respect to Asbestos Personal Injury Claims classified in Class 3, the Debtors have provided proof of a legitimate reason for the separate classification of such Claims, and such classification is justified.  (*see* [Confirmation Standards Exhibit] at 5-6, 12/11 Transcript, at 145:14-146:13).

(Rec. 30, ¶ G.2).

Once again, the Bankruptcy Court provided no explanation or analysis for overruling Mr. Valdez's objections and adopting as its own the following statement contained in pages 5 and 6 of the Confirmation Standards Exhibit provided by the Debtors:

> Asbestos Personal Injury Claims (Class 3 Claims) and Claims of Wholly Owned and Majority Owned Non Debtor Affiliates Other than DCC (Class 6B) Claims are classified separately from other unsecured Claims because such Claims will be unimpaired and Restated under the Plan;
>
> > 1.    All Asbestos Personal Injury Claims against the applicable Debtors have properly been classified together in Class 3 because they all have similar rights against the Debtors (i.e., the right to pursue a claim and seek to collect on any judgment or settlement), and all are receiving the same treatment under the Plan- Reinstatement.

(Rec. 30, ¶ G,2).

This explanation fails to satisfy the "legitimate reason" standard for two reasons.  First, all prepetition unsecured creditors held a right to pursue a claim and seek to collect on any judgment, not just the Asbestos Creditors segregated by the Debtors.  Second, the fact that, Asbestos Creditors are segregated from all other classes of unsecured creditors, and, therefore, receive different treatment under the Plan is the effect of the separate classification, not a cause necessitating or justifying separate classification.  *See In re Boston Post Road Ltd. Partnership.* 21 F.3d 477, 483 (2nd Cir. 1994), *cert. denied*, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995).

The other suggested justification for separate classification on which the Bankruptcy Court relied was the testimony of the Debtors' attorney that the Debtors have insurance coverage "largely available to pay asbestos-related claims."  12/11/2007 Tr. at 145:14.  However, in light of other provisions of the Plan, Asbestos Creditors' right to proceeds from the Debtors' insurance holdings cannot serve as a legitimate basis for separate classification of Asbestos Claims.  Article V.H.1 of the Debtors' Plan addresses the treatment of claims subject to a right to recover insurance proceeds, stating, in pertinent part:

> Distributions under the Plan to each holder of an Allowed Insured Claim will be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the holder thereof under any pertinent insurance policies and applicable law.

(Rec. 2, Art. V.H.1) (emphasis supplied).

The Plan defines "Insured Claim" to mean:

> [t]hat portion of any Claims arising from an incident or occurrence alleged to have occurred prior to the Effective Date: (a) as to which any Insurer is obligated pursuant to the terms, conditions, limitations, and exclusions of its Insurance Contract(s), to pay any judgment settlement, or contractual obligation with respect to the Debtors, or (b) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Contract(s).

(Rec. 2, Art. I.A.107).   Asbestos Claims are no different than other Insured Claims, yet the Bankruptcy Court used the availability of insurance as a justification for separate classification of Asbestos Claims, even though all other Insured Claims were simply classified alongside other general unsecured claims.   Therefore, to the extent the Debtors maintain sufficient insurance coverage to satisfy their Asbestos Claim liabilities, these claims would, at least in part, constitute "Insured Claims" under the Plan and would be similarly satisfied from insurance proceeds in accordance with Article V.H.1 of the Plan, even if classified with the general unsecured claims in Class 5B.   (Rec. 2, Art. V.H.1).   As a result, the availability of insurance does not provide a justification for separate classification subset of insured claims.

Based upon the testimony and evidence introduced at the Confirmation Hearing, the true purpose of the separate classification and treatment of Asbestos Claims appears clear:   1) to delay resolution of Asbestos Claims for as long as possible; 2) to "Reinstate" Asbestos Claims solely against Reorganized Debtors that have been stripped of the operating assets that could satisfy those claims; and 3) to prevent Asbestos Creditors from voting on the Plan.   As a result, the Bankruptcy Court's finding that the Debtors have separately classified claims of asbestos victims for a legitimate purpose constitutes clear error and mandates reversal of the Confirmation Order.

## CONCLUSION

Mounting asbestos liabilities can cripple even a healthy corporation.   Recognizing the complexity of the asbestos problem, Congress gave corporations a road to resolution – section

524(g) of the Bankruptcy Code. Dana and its affiliates chose not to take that road and, instead, put off to tomorrow a rational and equitable way to treat their asbestos victims. Unfortunately for the Debtors, the Bankruptcy Code does not authorize this discriminatory delay tactic. Unfortunately for the asbestos victims, the Bankruptcy Court, in acceding to these tactics, failed to protect the interests of those most in need of the Court's protection – Mr. Valdez and the more than 100,000 others who are suffering from exposure to Dana's asbestos products. For all the foregoing reasons, Mr. Jose Angel Valdez, respectfully requests that this Court: (i) reverse and vacate the Order Confirming Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession entered on December 26, 2007; and (ii) grant such other and further relief as is just.

Dated: February 19, 2008

Respectfully submitted,

JOSÉ ANGEL VALDEZ

By:     */s/ Alan Eric Gamza*
          One of his attorneys

Joseph D. Frank (JF 6085)
FRANK/GECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60610
(312) 276-1400 – telephone
(312) 276-0035 – facsimile
jfrank@fgllp.com

Alan Eric Gamza
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Phone: (212)554-7400
Fax:     (212) 554-7700
agamza@mosessinger.com

COUNSEL FOR JOSÉ ANGEL VALDEZ